**POLSINELLI LLP**
Alexander Polishuk (SBN 265349)
apolishuk@polsinelli.com
Alyssa M. Engstrom (SBN 313553)
aengstrom@polsinelli.com
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:   (310) 556-1801
Facsimile:    (310) 556-1802

Attorney for Plaintiff
OPTIV SECURITY INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| OPTIV SECURITY INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW WEISKE, an individual; and DOES 1-10, inclusive,<br><br>Defendant. | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. MISAPPROPRIATION OF TRADE SECRETS (VIOLATION OF CAL. UNIFORM TRADE SECRETS ACT);<br>2. BREACH OF CONTRACT;<br>3. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;<br>4. UNFAIR COMPETITION (VIOLATION OF CAL. BUS & PROF. CODE § 17200); and<br>5. UNJUST ENRICHMENT.<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

74496860.1

Plaintiff Optiv Security Inc. ("Optiv" or "Plaintiff"), a Delaware corporation, hereby brings this Complaint against Andrew Weiske ("Defendant" or "Weiske") an individual and alleges as follows:

## **JURISDICTION**

1. Plaintiff is and at all times mentioned in the Complaint was, a corporation, incorporated under the laws of the State of Delaware with its principal place of business located in Denver, Colorado. Plaintiff regularly conducts business in the State of California.

2. Plaintiff is informed and believes, and on that basis alleges, that Weiske is an individual who is and at all times mentioned herein was and continues to be a resident of the County of Orange, State of California where he is domiciled. Weiske is a former employee of Plaintiff's.

3. The true names and identities of the Defendant Does One to Ten, whether individuals, partnerships, corporations, limited liability companies, joint ventures, trusts, or otherwise, are presently unknown to Plaintiff, who therefore sues them by fictitious names. Plaintiff will amend the complaint to show their true names and identities when ascertained. Plaintiff alleges on information and belief that each of such fictitious Defendants are legally responsible in some manner for the events and damages alleged herein.

4. Jurisdiction in this Court is proper because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1)

5. A corporation is a citizen of both its state of incorporation and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). Thus, Plaintiff is a citizen of the States of Colorado and Delaware for diversity purposes. 28 U.S.C. § 1332(c).

6. To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. *Kantor v.*

*Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Thus, Defendant is a citizen of the state of California for diversity purposes. *Id.*

7. In determining whether a complaint meets the $75,000 threshold amount in controversy, the courts consider the aggregate amount of the claims and value of those claims. *Wolde-Meskel v. Vocational Instruction Project,* 166 F.3d 59, 62 (2nd Cir. 1999). Here, the value of damages that Plaintiff will suffer from the claims alleged in this Complaint exceeds $75,000.

## VENUE

8. Venue is proper in this Court because Defendant resides in Laguna Nigel, California, which is located within the District and Division of this Court. 28 U.S.C. §1391(b)(1).

## INTRODUCTION

9. This action arises out of Defendant's flagrant violations of the law, including misappropriation of Optiv's confidential and trade secret information and Defendant's breach of certain contractual commitments made in connection with his employment with Optiv. Upon information and belief, Defendant has utilized the misappropriated confidential and trade secret information in an attempt to tortuously divert Optiv clients away to his current employer – Kovarus, Inc. ("Kovarus") – a competing cyber security business.

10. Optiv is in the business of providing cyber security solutions utilizing proprietary processes, products, and technologies to deliver a range of security services to support its clients. Optiv also acts as a representative and provides customer support for various manufacturers of products which assist the delivery of cyber security solutions. Together with its predecessor, Optiv has been in business for at least 15 years. Weiske was employed by Optiv in various roles from approximately April 2012 to June 26, 2020, when he voluntarily resigned his

employment as a Client Director.

11. While Weiske still had access to Optiv's internal network, he downloaded and saved Optiv's trade secret information; specifically, data relating to approximately 14,000 of Optiv's clients, including the contact information for these clients ("Client List") to his Optiv central processing unit.

12. Upon Weiske's resignation in June 2020, Optiv requested that Weiske return his Optiv central processing unit.

13. Optiv learned that at some time prior to returning his Optiv issued central processing unit, e.g., laptop computer, Weiske had, downloaded, saved, and purloined the Client List to an external storage device, and deleted the files on his Optiv central processing unit.

14. Optiv was immediately alerted to Weiske downloading the Client List to an external USB drive.

15. Optiv spent significant time and resources creating and maintaining the Client List, including but not limited to, information related to detailed client contact information.

16. Following this discovery, Optiv confronted Weiske about these actions, which Weiske flatly denied, arguing the files he downloaded from his Optiv central processing unit to the external USB drive were his own personal files.

17. Despite Optiv's numerous attempts to resolve the issue informally and affording Weiske multiple opportunities to remedy this issue, Weiske continues in his refusal to cooperate.

18. Upon information and belief, Weiske is now employed by Kovarus, Optiv's direct competitor, and continues to improperly and unlawfully use Optiv's trade secret information for his new employer's benefit.

/ / /

/ / /

/ / /

# GENERAL ALLEGATIONS

*Weiske's Employment with Optiv and the Non-Disclosure Agreement*

19. Optiv is engaged in the highly competitive business of providing cyber security and related services to companies throughout the United States.

20. Weiske first worked for Optiv's predecessor FishNet Security Inc. ("FishNet") from April 2012 to July of 2015.

21. In 2015, Accuvant, Inc. and FishNet merged to become Optiv.

22. Weiske worked for Optiv and its predecessor entities for approximately eight combined years, most recently as a Client Director.

23. As a Client Director—a management position, Weiske was responsible for selling Optiv security services and security technology solutions to strategic accounts and coordinating all aspects of his sales teams while overseeing all accounts assigned to him. In his position, Weiske was exposed and permitted access to, for purpose of his duties towards Optiv only, confidential and proprietary information, including but not limited to copyrightable works or expressions; software programs in both source code and object code format and related materials; know-how; design information or concepts; advertising concepts; marketing or pricing information or strategies; customer and prospect lists (e.g. The Client List); market studies; pay, staffing or personnel information or policies, and other confidential information ("Confidential Information").

24. While employed, Weiske was subject to Optiv's Employment, Non-Competition and Non-Disclosure Agreement (the "Non-Disclosure Agreement"), which he signed on April 25, 2012, and which includes a number of valid and enforceable employee covenants. A true and correct copy of the Non-Disclosure Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

25. The Non-Disclosure Agreement explicitly states that "customer and prospect lists" are considered Confidential Information, and Weiske acknowledged that all such Confidential Information, as defined by the Non-Disclosure

Agreement, constitute trade secrets. Ex. A, ¶ 2(a).

26. In signing the Non-Disclosure Agreement, Weiske agreed to "not reproduce or disclose to any other person or entity any such [Confidential] Information, unless specifically authorized in writing by Company to do so." Ex. A, ¶2(b)(i).

27. Weiske also acknowledged that, through his employment, these trade secrets "may be entrusted" to him by Optiv, and Weiske agreed that he "shall comply with and implement all reasonable company policies or safeguards to protect such information from Disclosure, and that unauthorized disclosure of such information will cause irreparable harm and loss to Company." Ex. A, ¶ 3.

28. Weiske acknowledged that the restrictions contained in Paragraph 3 of the Non-Disclosure Agreement were "fair and reasonable." Ex. A, ¶ 3.

29. Finally, Weiske agreed and acknowledged that if any provision in the Non-Disclosure Agreement was violated, Optiv would suffer irreparable harm, would be entitled to injunctive relief to prohibit or restrain such breach or violation, and would be entitled to recover from Weiske all of the reasonable legal costs and expenses incurred in enforcing the Non-Disclosure Agreement. *See* Ex. A, ¶ 7.

### *Optiv's Trade Secrets*

30. Optiv invests substantial resources in marketing, real estate, promotional activities, and the provision to the public of professional, credible, and trustworthy cyber security services.

31. In order for Weiske to perform the functions of his job at Optiv, he was given access to competitively sensitive or commercially valuable data or information constituting trade secrets under California and federal law, including, without limitation, corporate strategic plans, vendor information, financial information, services and operational manuals, marketing strategic information, marketing data, sales information, sales strategy information, pricing data, customer lists, and internal prospect lists (referred to herein as "Confidential Information").

32. Optiv takes reasonable measures to protect the confidentiality and trade-secret nature of its Confidential Information, including, but not limited to, requiring employees, like Weiske, to sign agreements in which they agree to maintain the confidentiality of such Confidential Information.

33. Optiv further maintains its Confidential Information and trade secrets – such as customer lists, vendor lists, pricing, etc. – on a protected network which requires company authorization to access, a password, and multiple level authentication process. Access is limited to those individuals who require the use of the Confidential Information and trade secrets as part of their duties.

34. Optiv's Confidential Information was developed over time (e.g. through more than a decade worth of work) and at substantial expense to Optiv (e.g., through the work of thousands of employees). To Optiv's knowledge, this Confidential Information is not known outside of Optiv, and if its competitors had access to Optiv's Confidential Information they could save substantial time and cost that they otherwise would have to expend to develop the information on their own.

### *Defendant's Resignation and Misappropriation of Optiv's Trade Secret*

35. Mr. Weiske gave Optiv a one-week notice of his resignation on June 22, 2020, indicating that his last day of employment would be June 26, 2020. While Weiske still maintained access to Optiv's internal network, he downloaded and saved data relating to approximately 14,000 of Optiv's clients, including but not limited to contact information for Optiv's clients (the "Client List"), to his Optiv central processing unit.

36. Pursuant to Optiv's regular policy and practice, on July 1, 2020, following Mr. Weiske's last day of employment, he was asked to return Optiv Security Property, including his Optiv issued laptop. On July 14, 2020, still not having received the electronic hardware that was issued by Optiv to Weiske, Optiv's HR Department sent Mr. Weiske an e-mail reminding him to return the

equipment.

37. On or about 5:40 am PST on July 15, 2020, following Weiske's last day of employment but before Weiske returned his laptop, Optiv's Enterprise Endpoint Infrastructure Manager, received an alert from Optiv's data-loss prevention software that the confidential file maintaining Optiv's current and prospective client contact information had been copied from the Optiv Laptop belonging to Andrew Weiske to a portable storage drive.

38. On the very same day that Optiv received the notification from its data-loss software, Optiv contacted Weiske about these actions. Initially, Weiske flatly denied that he had transfer any confidential files. Upon Optiv communicating to Weiske that it had proof of his activities through tracing software showing that Weiske did in fact download Optiv's entire customer list and exported it on an external USB drive, Weiske changed his story, admitting that he had in fact taken the list, but that it was an "accident." However, considering that downloading such a list requires several specific and intentional steps, Weiske's excuse is clearly false.

39. Optiv did not receive the laptop it issued to Weiske back from Weiske until July 22, 2020. Upon receiving and reviewing the contents of the laptop Optiv determined that the entire laptop had been wiped clean and it could not assess nor run any further diagnostics on the file containing the Confidential Information that Weiske transferred nor confirm whether any other Optiv data or information had been transferred.

40. Optiv has made numerous attempts to provide Weiske an opportunity to amicably remedy the situation. On July 30, 2020, Counsel for Optiv sent a cease and desist letter via e-mail and overnight mail to Mr. Weiske. A true and correct copy of the letter is attached hereto as **Exhibit B** and incorporated herein by reference. A cease and desist letter was also sent by overnight mail to Kovarus. By way of the letter to Mr. Weiske, Weiske was asked to respond and acknowledge

that he would cease and desist using the Confidential Information which he misappropriated, return all Optiv files, and maintain status quo of all documents, electronic equipment, and electronic data to ensure that Optiv can assess the extent to which the Confidential Information had been shared. Mr. Weiske was asked to acknowledge and respond to Optiv's cease and desist letter on or before August 6, 2020, a full week after the letter was sent. Mr. Weiske did not respond to Optiv's letter until Friday, August 14, 2020, 5:04 p.m., via e-mail (the same e-mail address that was used to send the cease and desist letter) and provided nothing more than another general denial.

41. Although counsel for Optiv intended to initiate this lawsuit on August 14, 2020, based on Weiske's communication on that day, counsel for Optiv e-mailed Weiske on August 15, 2020 and offered to stipulate to a preliminary injunction that would provide for the return of all Optiv property and data in possession of Weiske, maintain a status quo on all documents, electronic equipment, and electronic data, and agree to expedited discovery, including a neutral forensic inspection (set forth under protocols agreed to in good-faith by the parties and Defendant's new employer) to ensure that Optiv can assess the extent to which the Confidential Information had been shared. Weiske did not execute the stipulation.

42. Upon information and belief, Weiske is now employed as a Senior Client Manager by Kovarus, a competitor of Optiv.

43. Upon information and belief, Weiske is still in possession of Optiv's Confidential Information, and used—and continues to use—such information to solicit Optiv's clients for the purposes of providing competing products and services.

44. Weiske's misappropriation of Optiv's Confidential Information prior to his departure from his employment constitutes a material breach of the Non-Disclosure Agreement and misappropriation of trade secrets under California law.

Optiv is informed and believes that Weiske has subsequently used or disclosed the Confidential Information, without authorization, to his advantage in soliciting customers at his current employment with Kovarus, thereby misappropriating Optiv's trade secrets. Optiv is informed and believes that Weiske continues to use Optiv's proprietary information for the benefit of developing his client base at Kovarus, in direct breach of the Non-Disclosure Agreement and in violation of CUTSA.

45. As a result of Defendant's misconduct, including, without limitation, his breach of his obligations to Optiv and misappropriation of Optiv's Confidential Information, Optiv has been—and continues to be—damaged and irreparably harmed.

46. The cyber security business is highly competitive.

47. Because of the integration required to serve clients in the cyber security market, once a client is lost, the likelihood that the client will return in the future, particularly near future, is highly improbable.

48. The lost future revenue streams, lost word of mouth, lost good will and other consequences can never be fully measured, nor compensated by monetary damages.

49. Unless Defendant's improper conduct is stopped, Optiv will continue to suffer irreparable harm.

50. In light of Defendant's conduct, including Weiske's complete disregard of Plaintiff's multiple attempts to informally resolve this matter, it is clear that Defendant cannot be trusted to respect the obligations contained in the Non-Disclosure Agreement, and injunctive relief is necessary to ensure that Optiv does not suffer further and continuing harm. Upon information and belief, Defendant is continuing to engage in conduct in violation of the Non-Disclosure Agreement and California law.

# FIRST CAUSE OF ACTION

## Violation of the California Uniform Trade Secrets Act – Cal. Civ. Code §§ 3426 *et seq.*

51. Optiv hereby incorporates by reference the allegations in paragraphs 1-41 above as though fully set forth herein.

52. Optiv maintains and owns Confidential Information and trade secrets that are not generally known to the public and derive independent economic value from not being generally known to the public or others who could obtain economic value from its disclosures or use.

53. Such Confidential Information and trade secrets include, but are not limited to customer lists, including but not limited to their contact information, and prospect lists.

54. Optiv makes reasonable efforts to maintain its Confidential Information and trade secrets confidential. For example, Optiv maintains its confidential information and trade secrets – such as customer lists, vendor lists, pricing, etc. – on a protected network which requires company authorization to access, a password is required to access such information, and access is limited to those individuals who require the use of the confidential information and trade secrets as part of their duties.

55. Weiske had access to and improperly took Optiv's Confidential Information and trade secrets without Optiv's permission.

56. Defendant improperly possesses and on information and belief used Optiv's Confidential Information and trade secrets to his economic benefit. For example, upon information and belief, Defendant is using Optiv's Confidential Information to contact Optiv customers in an effort to convince them to leave Optiv and bring their business to Defendant's new employer.

57. Defendant knows that he has deprived Optiv of its Confidential Information and trade secrets through improper means.

58. Optiv has no adequate complete remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering preliminary injunctive relief against Defendant.

59. Optiv is therefore entitled to preliminary injunctive relief against Defendant to enjoin actual or threatened misappropriation, use, and/or dissemination of its Confidential Information and trade secrets; to prevent Defendant from continuing to profit from the past use of Optiv's wrongfully procured Confidential Information; and to prevent Defendant from continuing to serve Optiv customers that but for Defendant's breach of his Non-Disclosure Agreement he would not have obtained.

60. Additionally, as a direct and proximate result of the wrongful conduct of Defendant, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv's clients, goodwill, revenues, and profits; and diminution in the value of its business.

61. Unless Defendant is enjoined, this misconduct will continue, and Defendant will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, future revenues and goodwill, to the irreparable injury of Optiv.

62. As a direct and proximate result of Defendant's actions, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

## SECOND CAUSE OF ACTION
### Breach of Contract

63. Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1- 53 above.

64. Defendant entered into the Non-Disclosure Agreement with Optiv whereby Defendant agreed to "not reproduce or disclose to any other person or

entity any such [Confidential] Information, unless specifically authorized in writing by Company to do so." Ex. A, ¶2(b)(i).

65. Defendant further acknowledged that, through his employment, these trade secrets "may be entrusted" to him by Optiv, and Defendant agreed that he "shall comply with and implement all reasonable company policies or safeguards to protect such information from Disclosure, and that unauthorized disclosure of such information will cause irreparable harm and loss to Company." Ex. A, ¶ 3.

66. Finally, Defendant agreed and acknowledged that if any provision in the Non-Disclosure Agreement was violated, Optiv would suffer irreparable harm, would be entitled to injunctive relief to prohibit or restrain such breach or violation, and would be entitled to recover from Defendant all of the reasonable legal costs and expenses incurred in enforcing the Non-Disclosure Agreement. *See* Ex. A, ¶ 7.

67. Defendant has breached the express terms of his Non-Disclosure Agreement by, among other things, his unlawful procurement of Optiv's Confidential Information.

68. On information and belief, Defendant is now employed by Kovarus, Inc., a competitor of Optiv's, and has used and/or disclosed Optiv's Confidential Information for the benefit of his new employer in further breach of his Non-Disclosure Agreement with Optiv.

69. Optiv has performed all obligations owed on its part under the Non-Disclosure Agreement, or is excused from performing those obligations.

70. As a direct and proximate result of Defendant's breach of the Non-Disclosure Agreement and other wrongful conduct, Optiv has suffered damages in an amount to be proven at trial, including but not limited to the loss of its clients, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

/ / /

/ / /

## THIRD CAUSE OF ACTION

### Intentional Interference with Prospective Economic Advantage

71. Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1- 61 above.

72. Optiv had long-standing business relationships with many of the Optiv clients who worked with Weiske during his employment as well as other Optiv clients Weiske was aware of while employed at Optiv, and an expectation that these business relationships would continue into the future. These clients include Clients A, B, and C.[1]

73. Weiske had knowledge of the long-standing relationships Optiv has with many of these clients, including, but not limited to Clients A, B, and C.

74. Weiske engaged in wrongful conduct that was intended to disrupt Optiv's economic relationships. Upon information and belief, Weiske intentionally and improperly interfered with Optiv's long-standing relationships with its clients, including, but not limited to Clients A, B, and C, by, inter alia, requesting or advising Optiv's clients to cease doing business with Optiv, soliciting and serving Optiv clients on Kovarus' behalf, and using Optiv's Confidential Information to engage in these actions, all in violation of his Non-Disclosure Agreement and/or California law.

75. Optiv's economic relationships, including prospective future benefits, were disrupted because Weiske's wrongful conduct prevented Optiv from maintaining exclusive, confidential information necessary to the uniqueness of its business operations.

76. Optiv has no adequate complete remedy at law, as Optiv's injuries cannot be fully quantified, and the balance of equities and public interest favor entering temporary and preliminary injunctive relief against Weiske.

---

[1] Optiv has kept the identity of its lost clients private for the purposes of this Complaint. However, once a protective order has been issued by the Court, Optiv will reveal the identity of the clients taken by Defendant.

77. Optiv's economic relationships, including prospective future benefits, were disrupted because Weiske's wrongful conduct prevented Optiv from maintaining exclusive, confidential information necessary to the uniqueness of its business operations.

78. Optiv is therefore entitled to injunctive relief to enjoin Weiske from continuing to request or advise Optiv's clients to cease doing business with Optiv and continuing to solicit and serve Optiv clients on Kovarus' behalf, in violation of his Non-Disclosure Agreement and/or California law.

79. Additionally, as a direct and proximate result of the wrongful conduct of Weiske, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv's clients, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

80. Unless Weiske is enjoined, this misconduct will continue, and Weiske will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, future revenues and goodwill, to the irreparable injury of Optiv.

81. As a direct and proximate result of the wrongful conduct of Weiske, Optiv has been and will continue to be damaged in an amount in excess of $75,000, to be proven at trial.

82. Because of Weiske's purposeful and willful actions, Optiv is entitled to punitive damages.

## FOURTH CAUSE OF ACTION

**Unfair Competition (Bus. & Prof. Code § 17200, et seq.)**

83. Optiv hereby incorporates by reference the allegations in paragraphs 1-73 above as though fully set forth herein.

84. Optiv invests substantial resources in marketing, real estate, promotional activities, and the provision to the public of professional, credible, and

trustworthy cyber security services.

85. Due to the unique nature of Optiv's business providing cyber security services, securing and maintaining customer trust is critical to Optiv's ability to sustain long-term value in its business, products, and services. Accordingly, protection of Optiv's Confidential Information and trade secrets is of the utmost importance in preventing reputational damage and loss of customers.

86. Defendant's conduct as alleged herein, including, but not limited to, interfering with Optiv's prospective economic advantage and purloining Optiv's Confidential Information, constitute unlawful, unfair, and/or fraudulent business acts or practices and unfair competition within the meaning and prohibited by Business and Professions Code section 17200, et seq.

87. Optiv has lost money or property within the meaning of the statute, including its Confidential Information and trade secrets, loss of future revenue streams and profits due to reputational damage, lost good will, and diminution in the value of its business.

88. Defendant's conduct was a substantial factor in causing Optiv harm.

89. In addition to injunctive relief, Optiv is entitled to restitution of all property wrongfully obtained by Defendant's unfair competition, including the expense of restoring it.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

90. Optiv realleges as if fully set forth herein the allegations contained in Paragraphs 1-80 above.

91. Defendant has been unjustly enriched by his unlawful procurement of Optiv's trade secrets.

92. Defendant is still being enriched and will continue to be enriched by receiving economic benefit from the use of Optiv's trade secrets.

93. Plaintiff has put Defendant on notice of his breaches and his use of

Optiv's trade secrets; yet Weiske has not ceased his activities and continues to profit from his actions.

94. It is unjust for Defendant to retain the benefits from the unlawful procurement of Optiv's trade secrets and Confidential Information.

95. As a direct and proximate result of the wrongful conduct of Defendant, Optiv has been irreparably harmed and will continue to be irreparably harmed through the loss of Optiv clients, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

96. Unless Defendant is enjoined, this misconduct will continue, and Defendant will continue to cause Optiv to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of clients, future revenues and goodwill, to the irreparable injury of Optiv.

## **PRAYER FOR RELIEF**

WHEREFORE, Optiv prays for judgment against Defendant as follows:

1. For a preliminary injunction, and a permanent injunction, restraining and enjoining Weiske and Weiske's agents, successors and assigns from the following:

   a. Violating his Non-Disclosure Agreement;

   b. Misappropriating, maintaining (in any tangible format other than to maintain them for discovery) or disclosing any of Optiv's Confidential Information;

   c. Directly or indirectly participating in or receiving or retaining benefits from Defendant's violation of the Non-Disclosure Agreement with Optiv and from otherwise depriving Optiv of the benefit of its bargain under its Non-Disclosure Agreement; and

2. For restitution by Defendant of all property wrongfully acquired by Defendant's unfair competition, plus the expenses of restoring it to Optiv;

3. For compensatory damages against Defendant according to proof and punitive damages in an amount necessary to deter Defendant in the future from the misconduct alleged;

4. For attorneys' fees and costs of suit herein incurred; and

5. For such other and further relief as the court may deem proper.

Dated:  August 17, 2020          **POLSINELLI LLP**

By: */s/ Alexander Polishuk*
    Alexander Polishuk
    Alyssa M. Engstrom

Attorneys for Plaintiff
**OPTIV SECURITY INC.**

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of its claims by jury to the extent authorized by law.

Dated:  August 17, 2020      **POLSINELLI LLP**


By:  */s/ Alexander Polishuk*
         Alexander Polishuk
         Alyssa M. Engstrom

         Attorneys for Plaintiff
         **OPTIV SECURITY INC.**