# EXHIBIT A

## EMPLOYMENT, NON-COMPETITION AND NON-DISCLOSURE AGREEMENT

THIS EMPLOYMENT, NON-COMPETITION AND NON-DISCLOSURE AGREEMENT ("Agreement") dated as April 25th, 2012 is made by and between FishNet Security, Inc. (the "Company"), and Andrew Weiske ("Employee").

### Recitals

Employee is currently an employee of or has been offered employment with Company, and Company wants to assure the protection of all of its confidential and proprietary information, trade secrets, and business interests and expectancies as a condition of Employee's initial or continued employment. Employee's employment with Company is at-will and nothing set forth in this Agreement is intended to render Employee anything other than an employee at-will.

Employee is willing to agree to and follow the terms and conditions in this Agreement.

### Agreements

In consideration of the initial or continued employment of Employee, the disclosure to Employee of the confidential and proprietary Information of Company, and the mutual promises and conditions in this Agreement, it is agreed as follows:

1. **Employment.** In consideration of the services to be rendered by Employee to Company, and in consideration of Employee's other covenants hereunder, Company shall employ Employee on an at-will basis, and shall pay Employee a commission and/or salary in an amount to be agreed upon by Employee and Company.

2. **Confidential and Proprietary Information and Trade Secrets.**

    a. Employee acknowledges and agrees that in the course of Employee's employment with Company, and in direct consideration for Employee's execution of this Agreement, Employee will have access to, receive and obtain information concerning the work conducted by Company or the operations of Company which may constitute confidential or proprietary information or trade secrets ("Information"), including, but not limited to: copyrightable works or expressions; software programs in both source code and object code format and related materials; know-how; design information or concepts; advertising concepts; marketing or pricing information or strategies; customer and prospect lists; market studies; pay, staffing or personnel information or policies, and other confidential information. Employee further acknowledges that such Information may be disclosed to Employee by Company and that Employee shall comply with and implement reasonable Company policies or safeguards to protect such Information from disclosure, and that unauthorized disclosure of such Information will cause irreparable harm and loss to Company.

    b. As a material inducement to Company to enter into this Agreement, to employ Employee, and to provide Employee with training, Information and access to Information, Employee agrees and covenants that:

(i) Employee will not reproduce or disclose to any other person or entity any such Information, unless specifically authorized in writing by Company to do so. If Company gives Employee written authorization to make any such disclosure, Employee shall do so only within the limits and to the extent of that authorization.

(ii) All Inventions (as hereafter defined), and other Intellectual Property Rights (as hereafter defined) acquired or developed by Company or Employee during the term hereof, shall be and remain the property of Company.

(a) Inventions mean discoveries, improvements, ideas, conceptions, developments, designs, and works of authorship, whether or not tested, reduced to practice, or subject to any form of legal protection which Employee may conceive or make, individually or along or with others, which directly or indirectly (i) relate to matters within the scope of Employee's duties or field of responsibility during his employment by Company; or (ii) are based on knowledge of the actual or anticipated business or research and development activity of Company; or (iii) are aided by the use of time, materials, facilities or information of Company. Employee acknowledges and accepts that Inventions shall be the sole and exclusive property of Company. Accordingly, Employee agrees to assign, and shall assign to Company or its nominee, without further right of compensation, all of Employee's rights, title and interest in and to any Additional Invention conceived or made (x) during Employee's employment or (y) within one (1) year after termination of Employee's employment.

(b) Intellectual Property Rights means any form of legal protection for Inventions in all countries of the world, including applications and certificates for Letters Patent, Utility Models, Inventor's Rights, Copyrights, and Trademarks. Employee shall assist Company and its agents in doing those things which may reasonably be needed or requested by Company to obtain, extend, reissue, maintain, or enforce Intellectual Property Rights. Should Employee render any of these services following termination of his or her employment, he or she shall be reimbursed for reasonable out-of-pocket expenses incurred in rendering the services.

(iii) During the term of this Agreement, Employee will promptly divulge to Company all Inventions which Employee develops or discovers.

(iv) Employee's participation in the development of this Information and intangible assets, or employee's knowledge of the existence of such Information, does not give rise to any rights on Employee's behalf to disclose or utilize these intangible assets or Information.

3. <u>Non-Solicitation and Non-Competition</u>. In order to avoid the disclosure of Company's Information, and in order to avoid providing other unfair advantages to Company's competitors, including the benefit of any special training which Company will provide to Employee, and the benefit of special goodwill and rapport developed by Employee with Company's Customers (as defined below), and as a material inducement to Company to enter into this Agreement, to employ Employee, and to confer the agreed upon consideration, Employee expressly covenants and agrees that during Employee's employment with Company and for one (1) year from and after the voluntary or involuntary termination of Employee's employment with Company (the "Non-Competition Period"), Employee shall not directly or indirectly though an agent:

a. Engage in, or advise or provide consultation regarding, activities similar to those which Company renders to its Customers by either directly or indirectly becoming personally involved in, associated with, employed by, or under contract to any person or entity which is directly or indirectly in competition with Company at any time during the Non-Competition Period within the territory in which Employee works or has worked for Company, within one-hundred (100) miles of any Company office or location at the time of the termination of Employee's employment with Company (the "Non-Competition area");

b. Call upon, solicit, divert, take away, deliver to, sell to or service, work for as an employee, independent contractor or on any other basis, or attempt any such activity with, any Customer, including prospective Customers, of Company as of the effective date of this Agreement or at any time thereafter during the Non-Competition period (for purposes of this Paragraph 2, "Customer" shall mean any person, company or other entity which has bought goods and/or services from Company within the last two (2) years, including without limitation, those customers with whom Employee had contact or whose account Employee serviced during Employee's employment with Company; or

c. In any way interfere with or attempt to interfere with the relationship between Company and any employee of Company including that Employee shall not, directly or aid a competing entity to, induce or attempt to induce any employee of Company to (i) leave Company's employ, or (ii) to work for, as an employee, independent contractor or otherwise, any person or entity which is directly or indirectly in competition with the Business of Company at any time during the Non-Competition Period. (for purpose of this section, an "employee of Company" shall mean any person who is employed by Company as of the date of the inducement or attempted inducement or who was employed by Company at any point during the six (6) months prior to such date.)

In the event of a breach by Employee of any covenant set forth in Paragraph 2 of this Agreement, the term of such covenant shall be extended by the period of the duration of the breach.

4. <u>Reasonableness of Restrictions</u>.

a. Employee has carefully read and considered the provisions of this Agreement and, having done so, acknowledges and agrees that the restrictions set forth herein (including, but not limited to, the time period of restriction, the geographical areas

of restriction, and the scope of activities restricted, set forth herein) are fair and reasonable and are reasonably required for the protection of the interests of Company.

b. Employee represents that Employee's experience, capabilities, and personal assets are such that this Agreement does not deprive Employee from either earning a livelihood in the unrestricted business activities which remain open to Employee or from otherwise adequately and appropriately supporting him/herself.

5. Future Employment. Employee shall, within ten days of accepting any employment, during the year following the termination of his/her employment with Company, advise Company of the identity of Employee's employer.

6. Severability. If one or more of the provisions or paragraphs of this Agreement shall be held to be illegal or otherwise void or invalid, the remainder of this Agreement shall not be affected and shall remain in full force and effect.

7. Breach of Agreement; Remedies. Employee acknowledges and agrees that damages alone will be inadequate protection for Company in the event of a default of this Agreement and that Company shall, in addition to monetary damages, be entitled to injunctive relief to restrain any breach or threatened breach or otherwise to specifically enforce any provision of this Agreement, and to all other remedies authorized by law, equity or this Agreement, including the recovery of reasonable attorney's fees and costs.

8. Entire Agreement. This Agreement contains the entire agreement of the parties with respect to the subject matter addressed herein and supersedes and replaces any other agreements or understandings between them with respect to the subject matter of this Agreement. This Agreement may be changed only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

9. Governing Law. Company and Employee agree that any dispute arising out of or related to this Agreement shall be determined solely by a federal or state district court located in Jackson County, Missouri. The validity, enforceability, and terms of this Agreement shall be governed by, and construed in accordance with, the laws of the State of Missouri.

10. Severability. Each provision of this Agreement shall be treated as a separate and independent clause, and the unenforceability of any one clause shall in no way impair the enforceability of any of the other clauses herein.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date and year first above written.

Employee Signature: *[signed] Andrew W.*

Date: 4-25-12

Fishnet Security: *[signed]*

Date: 4/26/12

William H. Croutch

Vice President

FNS Agreement 2011

4